## Marks Estate

*Maurice D. Lee III,* for petitioners.
*Louis N. Teti,* guardian ad item.

WOOD, *J.,* January 12, 1989 — The co-guardians of the estate of the incompetent, David Marks, have filed this petition seeking authorization to make inter vivos gifts from David's estate to members of his family in order to minimize estate and inheritance taxes.

David was rendered incompetent as the result of severe head injuries which he received in an automobile accident on November 26, 1978. At the time of the accident, David was 20 years old and was intestate. On July 6, 1979, David was adjudged incompetent, and his father, Daniel W. Marks, was appointed guardian of his estate. Some years later, David's estate received a settlement in excess of four million dollars as the result of a claim arising from the automobile accident. Continental Bank was appointed co-guardian of the estate on January 31, 1984.

Thereafter, the co-guardians filed a petition asking the court to "substitute its judgment" for that of

the incompetent, as provided in section 5536(b) of the Probate, Estates, and Fiduciary Code (PEF), 20 Pa.C.S. §5536(b), and to direct that David's estate be conveyed to revocable trust. The trust instrument would provide for the transfer of up to $10,000 annually out of trust income to each of David's parents and two brothers, his immediate heirs under the Pennsylvania intestate laws. The petition averred that this scheme would accomplish a substantial savings in death taxes and "would accomplish the transfer of monies from David's estate to the natural objects of his bounty without transfer tax ramifications." (Petition for substitution of judgment, filed July 15, 1985, para. 12.)

On July 30, 1985, I granted this petition and on May 28, 1986, the trust was created and David's estate was transferred to it. The trust instrument provides that after the trustees have made all expenditures necessary for David's care and comfort from the income of the trust, they may, in their discretion, distribute up to $10,000 per year from the remaining income to David's parents and two brothers. The trust instrument also provides for the distribution of the principal to these four individuals or their issue upon David's death, with any amount distributable to a minor to be held in trust until majority.

On February 1, 1988, the co-guardians filed a second petition, requesting the court to authorize annual gifts of $10,000 to any spouse of either of David's brothers and any issue of either brother, in addition to those gifts presently being made. The petition avers that one of David's brothers, Daniel Marks Jr., is now married, but that neither brother currently has any issue. The co-guardians state that the purpose of this request is to further minimize death taxes.

The petition also avers that the present value of the principal of the trust is now in excess of $5 million and that the annual income therefrom is approximately $375,000, nearly all of which is tax-free. Commissions to the trustees for the year 1987 were approximately $19,700 and distributions from the trust for David's expenses amounted to approximately $1,160, leaving surplus income in excess of $350,000. This amount is added to principal. David is now 30 years old and is institutionalized at the Woods School in Langhorne, Pa. A substantial portion of his medical expenses and living expenses are being paid by the proceeds of Pennsylvania No-fault Insurance, and that coverage is expected to continue for the rest of David's life.

After receiving this petition, I appointed Louis Teti, Esq., as guardian ad litem for David, and directed him to investigate the allegations and consequences of the petition. Mr. Teti's report, filed October 19, 1988, confirm the factual allegations of the petition. He reports that according to Dr. Arnold I. Kramer of the Woods School, David will not experience any significant medical improvement during his lifetime, although it is possible that David could live a normal lifespan. Mr. Teti found that David is well cared for, and since his expenses are covered almost entirely by no-fault insurance proceeds, very little of the trust fund is spent for David's maintenance. Thus, the income continues to accumulate. Currently, the fund is increasing by over $350,000 per annum. According to the projections of the corporate trustee, the fund will nearly double in 10 years and will increase geometrically thereafter.

Mr. Teti concluded, however, that notwithstanding the size of David's estate, the gifts which the trustees propose for estate planning purposes should be limited to David's intestate heirs, or the natural

objects of David's bounty. Thus, he concluded that while gifts to the issue of David's brothers would be justified, gifts to David's sisters-in-law are not warranted. For the reasons discussed below, I agree.

20 Pa.C.S. §5536(b) provides:

"(b) *Estate plan* — The court, upon petition and with notice to all parties in interest, shall have the power to substitute its judgment for that of the incompetent with respect to the estate and affairs of the incompetent for the benefit of the incompetent, his family, members of his household, his friends and charities in which he was interested. This power shall include, but is not limited to, the power to:

"(i) Make gifts, outright or in trust.

. . .

"In the exercise of its judgment for that of the incompetent, the court first being satisfied that assets exist which are not required for the maintenance, support and well-being of the incompetent, may adopt a plan of gifts which results in minimizing current or prospective income, estate or inheritance taxes, or which carries out a lifetime giving pattern. The court in exercising its judgment may consider the testamentary and inter vivos intentions of the incompetent insofar as they can be ascertained."

Thus, I must first be satisfied that the assets of David's estate will continue to exceed the amount needed for his maintenance before authorizing additional gifts to be made. Considering the size of David's present estate and the rate of its growth, the income from the fund alone should be more than adequate to meet his expenses, even if David's insurance benefits were to cease for any reason or if his medical costs were to increase. Secondly, the statute authorizes the court to adopt a plan of gifts

for the sole purpose of minimizing death taxes. However, I note that the proposed plan leaves most of the discretion up to the trustee, rather than the court, and arguably I should narrow the scope of that discretion.

The real issue in this case is whether I should authorize gifts to the spouses of David's brothers. The statute provides that gifts may be made to the incompetent's "family" (the only term under section 5536(b) which might include these spouses).

I have not been able to find a definition of "family" which seems to cover this situation directly. Section 6114 of the PEF, 20 Pa.C.S. §6114, says that, as used in conveyances, "family" shall be taken to refer to those who would take under the intestate laws. The. rules of intestate descent provide for blood relatives but not in-laws: see 20 Pa.C.S. §2101 et seq. Black's Law Dictionary (5th ed.), contains a lengthy definition of "family," and without repeating it word for word, the definition appears to include *either* blood relatives or those living under the same roof, but not spouses of relatives.

Accordingly, I could make a good case for denying distribution to spouses of brothers purely on the basis that they are not technically family. However, I would like to carry the inquiry further.

For instance, the statute provides that I "may consider the testamentary and inter vivos intentions of the incompetent insofar as they can be ascertained."

Petitioners and the guardian ad litem point out that in this case David had never expressed any testamentary intentions and that because he was so young at the time of the accident, he probably had not formulated any testamentary intentions. Further, his estate before the accident was minimal,

and he had established no pattern of giving. Thus, any effort to determine who David may have considered to be the proper objects of his bounty amounts to sheer speculation.

Petitioners apparently take the position that in the absence of any indication of the objects of David's bounty, I should assume that David would have adopted any plan of giving that would reduce death taxes for his family as long as his care and comfort are not compromised. However, this argument sets no limits on the number of the degree of affinity of persons who should receive the gifts, and it opens the door to disbursements of an incompetent's estate to distant relatives and strangers to the incompetent. If David were able to formulate a plan, I doubt that he would be quite so generous.

In my view, the purpose of estate planning is to save death taxes on behalf of the beneficiaries of the estate, or in this case, David's heirs as named in the trust instrument. Thus it is reasonable to make these individuals the present beneficiaries of gifts in order to protect their future inheritance. David's sisters-in-law are not entitled to any of David's estate upon his death. Annual gifts to her or them would thus be in the nature of a windfall, as well as a diversion of funds from the proper heirs. However, the issue of David's brothers are named in the trust instrument as contingent beneficiaries and thus, if any such issue emerge, they would be proper recipients of gifts from David's estate.

I am not saying that gifts made pursuant to section 5536(b) should be restricted to the incompetent's heirs in every case where there is no indication of the incompetent's subjective intent as to the objects of his bounty. In this case, however, I find that the adoption of petitioners' proposed plan

would be a poor precedent, and would pave the way for unlimited demands upon an incompetent's estate in future cases.*

I would like to acknowledge with thanks the willingness of Louis N. Teti, Esq., to serve as guardian ad litem in this matter. He performed his services in an able and professional manner.

## DECREE NISI

And now, January 12, 1989, upon consideration of the petition for substitution of judgment filed February 1, 1988, and after argument, it is hereby decreed that Daniel W. Marks and Continental Bank, co-guardians of the estate of David A. Marks, incompetent, shall amend paragraph second of the deed of trust of David A. Marks, settlor, dated May 28, 1986 to provide as follows:

*"Second: Terms of the Trust during the life of David A. Marks:* During the life of David A. Marks, the trustees shall apply for his benefit so much of the net income as is necessary, in the sole discretion of the trustees, for his comfortable support, health, maintenance and welfare. In addition, following the payment of all such expenditures necessary for the comfortable support, health, welfare and maintenance of David A. Marks, if sufficient income still remains at the end of any calendar year, the trustees

---

* I can't refrain from commenting on the irony of achieving a settlement for David which produces more money than he will ever need. Part of my concern in this case lies with the larger questions raised by this settlement: Who is being served? Who benefits? What has been achieved for David? Presumably this settlement was obtained and approved on his behalf because he needed this money — it was his compensation for his loss. At the very least, we should be slow to spread it around among relatives and in-laws. This is a very disturbing case, but I have no solution to offer other than what I have said.

*may* distribute to or among such one, more or all of Daniel W. Marks, Shirley A. Marks, Daniel W. Marks Jr., Richard S. Marks, or to any of the issue of Daniel W. Marks Jr. or of Richard S. Marks, as shall be living at any such time of distribution, such amounts, equal or unequal, from the net income of this trust as the trustees, in their sole discretion, shall deem advisable; provided, however, that no such recipient of any such discretionary payments of income shall receive from the trust total distributions in excess of $10,000 per year; and provided further, that any such gifts made to a minor or disabled beneficiary shall be held in trust by the co-trustees, or some other person appointed by the court, until such time as the beneficiary attains the age of majority or some older age, as the court may determine, or until the disability of the particular beneficiary ceases. All additional income shall be accumulated and added to the principal."

This decree nisi shall become the final order of this court unless exceptions hereto are filed within 10 days of this date.